[No. 16607. Department One. February 4, 1922.]

# HERBERT B. KAUFMAN et al., Appellants, v. HARRY H. HEWITT et al., Respondents.[1]

SHIPPING (6)—CONTRACTS—CONSIDERATION—FRAUD. Where plaintiffs leased a boat of defendants for salmon fishing in Alaska waters under a contract requiring the lessees "to purchase a purse seine net suitable in size and quality for salmon fishing," for whose purchase price the lessors gave their promissory notes, the lessors cannot be held liable thereon for the purchase by the lessees of a net of insufficient size, represented as complying with the contract, but which was old, worn and rotten, though one of the lessors had seen it before giving the notes, but had not inspected it.

SAME (9)—BREACH OF CHARTER BY CHARTERER. Where the lessees of a fishing boat agreed as part of their contract to purchase a seine net, care for it while in their possession, and return it to the lessors at the close of the fishing season in as good condition as it then was, they were bailees of the seine net, and chargeable with its loss as a result of their own negligence.

SAME (9, 14)—BREACH—ACTIONS. In an action growing out of a contract for the lease of a boat during the salmon fishing season under which the lessors were to receive a proportion of the sum realized from the sale of fish caught during the season, a finding by the court on contradictory evidence that the lessees did not engage in fishing and that the value of the use of the boat during the fishing season was $50 per day, will not be disturbed on appeal.

SAME (9)—BREACH—DAMAGES—MEASURE OF DAMAGES. Where a boat was leased for an Alaska salmon fishing season on the basis of a proportionate share in the catch, and the boat did not engage in fishing, the proper measure of damages is the value of the use of the boat computed on the number of days the fishing would have been profitable.

[1]Reported in 204 Pac. 199.

Appeal from a judgment of the superior court for King county, Reynolds, J., entered April 29, 1921, upon findings in favor of the defendants, in an action on contract, tried to the court. Modified.

*A. G. Laffin* and *W. C. Hinman,* for appellants.
*Howard O. Durk,* for respondents.

FULLERTON, J.—This action has its foundation in a written contract, entered into on April 27, 1920, by the appellants on the one side and the respondents on the other. The contract is long and somewhat minute in its details, and its substance only needs be set forth. In the contract it is recited that the respondents are the owners of a certain boat known and registered as the "Decision", which boat is suitable for use in salmon fishing, and that the appellants are desirous of securing the use of the boat for salmon fishing during the fishing season of 1920. It is then agreed that the respondents will lease the boat to the appellants for the fishing season named, and will send along with the boat one of their number to act as engineer of the boat and to perform other services thereon when needed and when the work can be performed without interfering with his duties as engineer; that the appellants will hire the boat and will use it in salmon fishing during the full fishing season of 1920, "or as long as the fishing is good enough to warrant continuance of the same, of which fact they shall be the sole judges"; that the appellants shall purchase a purse seine net of suitable size and quality for salmon fishing to be used on the boat, and make such initial payment on the same as may be necessary to procure it; that they will take proper care of the boat and its equipment while in their possession and return the same with its equipment to the respondents at the close of the fishing

season in as good condition as they were when received, ordinary wear and tear excepted; that they will care for the purse seine in a good and workmanlike manner and will give it good and proper treatment so as to preserve it until the next fishing season, barking it and doing all other things necessary in the premises; and that they will loan to the respondents the sum of $625 to be used in paying certain indebtedness against the boat "Decision", and for other specified purposes, which sum shall be secured by mortgage upon the boat. It was further agreed that the respondents will make all payments on the purchase price of the purse seine subsequent to the initial payment as the same become due, and at the end of the fishing season will repay the appellants the amount of their initial advancement upon the purchase price of the net. It was mutually agreed that from the gross sum received for the sale of fish caught during the fishing season there should be deducted all moneys expended or advanced by either of the parties to the contract after the delivery of the boat to the appellants, for supplies, fuel, and incidentals. It was further mutually agreed that

"Two-sevenths of the remaining sum less the sum paid by the parties of the second part as the initial payment on the said purse seine net shall be paid to the parties of the first part, the remaining sum shall be paid to the parties of the second part, and it is further agreed that if there is not sufficient money received by the sale of the fish caught by the said 'Decision', of Tacoma, during the present fishing season to pay all of the expenses for supplies, fuel and incidental expenses and for the said purse seine net, in full, and for any other sum that may be owing to the parties of the second part by the parties of the first part, including the total purchase price of the said purse seine net, which will in that event be paid by parties of the second part, then and in that event the parties of the second part agree to accept, and the

parties of the first part hereby agree to make, execute and deliver to the parties of the second part a mortgage on the said boat 'Decision', of Tacoma, as security for the payment of the said sums enumerated in this paragraph, which mortgage shall be payable one year from the date of execution thereof with interest at the rate of 3% per annum and in the usual standard form. In event of loss on incidental expenses, parties of the first part will be held for 2/7 of such loss."

The action was instituted by the appellants. In their complaint, after setting forth the contract, they allege that, acting pursuant thereto, they purchased a purse seine net at a cost to themselves of $2,200, and had made certain advancements in the execution of the contract, which sums had not been repaid to them, and that the respondents had refused to execute a mortgage on the vessel named in the contract to secure the same. The relief sought was a "decree ordering the defendants to comply with the terms of the contract, and to make, execute and deliver to the plaintiffs a mortgage on said boat 'Decision' to secure the sums."

The answer of the respondents, after making certain denials, affirmatively set up that they had executed and delivered to the appellants their notes for the alleged purchase price of the net, that they had executed a mortgage on the boat for certain moneys loaned them by the appellants; that the appellants had been guilty of fraud in purchasing the net, had carelessly, negligently and fraudulently suffered the same to be lost, because of which it could not be returned to the respondents; and that they had breached the contract in other respects, to the damage of the respondents greatly in excess of the amount of the loan. The relief sought by them was a cancellation of the notes and mortgage and for a judgment over against the appellants.

The cause was tried to the court sitting without a jury. Summarized, the findings were these: (1) That, acting under and in pursuance of the agreement, the appellants found and purchased a second-hand purse seine net, which they represented and stated to the respondents was suitable for the purpose intended, and which cost the sum of $2,200; that the respondents, believing such representations, executed and delivered to the appellants their promissory notes for the amount of the purchase price. (2) That the net purchased was not suitable for the purposes intended, in that it was not of sufficient size, and was old, worn and rotten, and would tear under slight pressure. (3) That the corks were detached therefrom, and the net placed on the boat's turntable for carriage to Alaska was insecurely fastened, being held down by a canvas fastened to the turntable by laths nailed around the edges of the canvas; that the net was lost by being washed overboard when the boat was passing through tide rips while it was about eighteen hours out at sea on its way from Seattle to Alaska; that the boat continued on its way to Alaska and arrived there without a fishing net; that the appellants did not engage in fishing, although salmon were running during the fishing season; that they kept the boat in their possession until nearly the close of the fishing season, during which time they employed it to other uses, appropriating its earnings to themselves. (4) That, before leaving for Alaska, the appellants had the net insured in their own names, giving as a reason therefor that they were responsible for its return to the respondents under their contract. (5) That the boat was put in proper repair and properly fitted for fishing when it was delivered to the appellants. (6) That the appellants loaned the respondents the sum of $1,125, taking as security therefor a mortgage upon the boat,

which mortgage was properly recorded. (7) That the appellants expended the sum of $600 in fuel, equipment and supplies for the vessel while in their possession. (8) That the appellants violated their agreement in that they did not engage in fishing for salmon with the boat; that the respondents received no compensation for the use of the boat, and that the value of its use during the fishing season was $50 per day.

As conclusions of law, the court found that the appellants were responsible for purchase of the net, that it was worthless, and that there was no consideration for the notes given them for its purchase price; that the respondents were damaged by the appellants' breach of the contract to engage in fishing in the sum of $50 per day during the fishing season, and that, after deducting this sum from the amount due on the notes, plus the sum the appellants paid for the fuel, equipment and supplies, there remained a balance due the respondents in the sum of $457.50.

Judgment was entered in favor of the respondents for the last mentioned sum, and this appeal followed.

The appellants' argument on the appeal is mainly directed to the sufficiency of the evidence to justify the findings of the court. With respect to the net, the evidence, in our opinion, decidedly preponderates in favor of the findings. By the terms of the contract, the duty rested upon the appellants "to purchase a purse seine net suitable in size and quality for salmon fishing to be used on the boat 'Decision'," and they not only purchased a net, but represented by both words and conduct that it was such a net as they were required to purchase by the terms of the contract. These were representations on which the respondents had a right to rely, and the evidence is that they did rely thereon. It is true that one of the respondents twice saw the net prior to the execution and delivery

of the notes, but his testimony is that he gave it no more than a cursory examination, and did not then discover, or observe anything that would cause him to suspect, that the net was not as it was required and represented to be. The evidence is clear that the net was worthless. The fact is not only so stated by a number of disinterested witnesses, but the appellants' subsequent conduct with respect to it is strong evidence that they so considered it.

But while the trial court rested its finding that the consideration for the notes had failed for the foregoing reasons, the evidence justified a similar conclusion on a different ground. The contract provided that the appellants should care for the net while it was in their possession and return it to the respondents at the close of the fishing season in as good condition as it then was, reasonable use excepted. Under the contract, the appellants were bailees of the net and could not excuse themselves from a failure to return other than by a showing that it was lost without their fault. Here the evidence shows to the contrary. The appellants were negligent in the manner of loading the net on the boat. The net was covered with a coating of tar before loading and formed a mass weighing many hundred pounds. It was placed on an exposed part of the boat. It was not tied on in any manner, the ordinary and usual way of fastening such things, but was held in place by an ordinary canvas covering, in itself insecurely fastened to the boat. Even the corks, which would have caused the net to float and thus enabled it to be recovered in case it fell into the water, were taken off of it. Plainly its loss under such circumstances cannot be said to be a loss without fault.

The sufficiency of the evidence to justify the finding that the appellants breached the contract in failing to

engage in fishing is also questioned. But while the evidence on the question is conflicting, we are unable to say that it preponderates against the court's finding. It will be remembered that, when the boat reached Alaska, it was not prepared to fish. It had no fishing net, and no effort was made to procure one. The boat was used at such odd jobs as could be found until the fishing season was practically ended, when it was returned to the respondents at the place it then was. While the fish may not have been running in their usual numbers, other parties with similar boats found the fishing profitable. The contract was to engage in fishing, and a failure to so engage was, under the circumstances, a breach of the contract.

But we think that the court allowed too large an amount as the respondents' measure of damages for the breach of the contract. The evidence justifies the finding that the use of the boat was of the value of fifty dollars a day during the fishing season, but we are unable to conclude that the finding as to the number of days the fishing would have been found profitable was justified. The exact number of days' fishing that would have been found profitable is difficult of determination from the evidence, but we think an overcharge has been made in this respect sufficient to offset the money judgment allowed the respondents if the appellants' costs of this appeal, which might otherwise follow, be disallowed.

The judgment will therefore be modified to the extent of disallowing the money judgment awarded to the respondents, and affirmed in all other respects. Neither party will recover costs on the appeal.

PARKER, C. J., MITCHELL, TOLMAN, and BRIDGES, JJ., concur.